354 So.2d 488 (1977)
STATE of Louisiana
v.
Samuel PROCTOR and Willie Young, Jr.
No. 59809.
Supreme Court of Louisiana.
December 27, 1977.
*489 Jude Thaddeus Fanguy, Houma, for Willie Young, Jr.
Van F. Ellender, Houma, for Samuel Proctor.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Norval J. Rhodes, Dist. Atty., James L. Alcock, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
Defendants Samuel Proctor and Willie Young, Jr. were jointly charged by bill of information with one count of armed robbery and nine counts of attempted first degree murder. La.R.S. 14:64; La.R.S. 14:27; La.R.S. 14:30. They were tried jointly by a twelve person jury and found guilty of one count of armed robbery, eight counts of attempted first degree murder and one count of attempted second degree murder. The trial court sentenced each defendant to serve terms of ninety-nine years at hard labor without benefit of probation or parole on the armed robbery counts and fifty years at hard labor on each of the remaining nine counts, the sentences to be served consecutively. Defendant Proctor argues four assignments of error on appeal as does defendant Young.[1]
These charges arose out of the following incident. At about 2:30 p. m. on February 21, 1976, defendant Samuel Proctor entered an RGS Supermarket in Houma, Louisiana, and ordered two store employees to fill a paper sack with cash from the registers. At first they thought he was joking but when defendant drew a .38 caliber revolver, they quickly complied with his demands. Proctor left with the money and crossed the parking lot to a green Chevrolet in which defendant Willie Young was waiting. With Young at the wheel, they sped away.
A witness to the robbery followed the car until she was able to flag down a policeman. This man, Captain Authement of the Houma Police Department, had already been notified of the robbery and been given a description of the getaway car by police broadcast. When he was alerted that defendants were the fugitives, he turned on his flashing light and siren, radioed for assistance and gave chase. Responding to Authement's call, Officers Larry Pontiff and Roy LeBoeuf joined in the pursuit. Proctor exchanged gunfire with each of the officers, and by turning down a gravel side road defendants were able to elude their pursuers. As defendants emerged onto a main road, however, they were met by Officers John Price and Orville Callahan in their patrol unit. Again there was an exchange of gunfire before a high speed chase began through a residential neighborhood. When Detectives Johnny Mann and John Fitzgerald joined in the chase, Proctor leaned out of his window and fired upon them as well, striking their vehicle but causing no injury.
Detective Frank Finane set up a roadblock in defendant's path by parking his car across the road. As they approached he took cover behind his vehicle and fired at them; but when he paused to reload his gun Young accelerated and struck the rear end of the patrol unit which spun around, knocking Finane to the ground and allowing defendants to pass.
A quarter mile up the road, police had set up another roadblock. Defendant's car rammed it broadside, then maneuvered around it and in so doing struck and seriously injured Deputy Wayne Ledet, who had positioned himself at the side of the road. Defendants were apprehended shortly thereafter when one of the pursuing vehicles pushed their car off the road.

*490 ASSIGNMENT OF ERROR NO. 1 (YOUNG)
Defendant Young contends that the trial court erred in denying his motion for severance of offenses.[2] He concedes that the offenses were properly joined under Article 493 of the Code of Criminal Procedure[3] because they are based on the same criminal transaction, but claims that severance was necessary to achieve a fair determination of his guilt on the nine counts of attempted first degree murder and the one count of armed robbery. His motion specifically asserted that he:
"would be prejudiced and not able to obtain a fair determination of his guilt or innocence of each offense charged if the trial of the Armed Robbery Charge is held at the same time as the trial of the 9 counts of Attempted First Degree Murder; and . . . is entitled to and desires a severance of the trial of this matter so that the trial of the Armed Robbery is held separately from the trial of the 9 attempted First Degree Murders."
What defendant requested, and now argues before us that the judge wrongly denied, was severance of the offenses for two trials, one for the armed robbery count, and another for the nine attempted first degree murders.
Severance of joined offenses is regulated by Article 495.1 of the Code of Criminal Procedure which provides that:
"The court, on application of the prosecuting attorney, or on application of the defendant shall grant a severance of offenses whenever:
(a) if before trial, it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense; or
(b) if during the trial upon consent of the defendant, it is deemed necessary to achieve a fair determination of the defendant's guilt or innocence of each offense. The Court shall consider whether, in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense."
This provision, modelled after the ABA Standards relating to Joinder and Severance, is designed to weigh the possible prejudice to a defendant in meeting multiple counts in a single trial against the public interest in avoiding time-consuming, duplicitous and expensive trials, represented in the companion statute on joinder. See State v. Carter, 352 So.2d 607, (La.1977); State v. McZeal, 352 So.2d 592; ABA Standards relating to Joinder and Severance, § 2.2(b) and commentary. The article provides alternate tests for determining whether a severance should be granted, depending upon when the question is raised: the broader "appropriate to promote a fair determination of defendant's guilt or innocence" standard is applicable before trial, when the decision often rests upon speculation as to what will occur during trial; the stricter "necessary to achieve" standard is applicable to a severance motion urged after trial has already commenced, when the court is in a better position to analyze the actual prejudice accruing to the defendant. See commentary, ABA Standards, § 2.2(b) supra. In either case, one critical question[4] is "whether, in *491 view of the number of offenses charged and the complexity of the evidence . . . offered, the trier of fact [could] distinguish the evidence and apply the law intelligently as to each offense." C.Cr.P. art. 495.1.
The commentary to the source provision explains that the above-quoted portion
"stresses the fact that the critical issue when severance of related offenses is in question is whether the trier of fact will be in a position to separate out the facts and law applicable to each count." ABA Standards, § 2.2(b), p. 33.
Other commentators have discussed the necessity for trial judges, who must decide the merits of severance motions, and the appellate courts, which review those judgments, to consider the number and complexity of the crimes charged, and the likelihood of confusion on the part of the trier of fact. 37 La.L.Rev. 203 (1976); Wright, 1 Federal Practice and Procedure § 222, p. 435; 8 Moore's Federal Practice §§ 8.02[1], 14.03.
Some of the dangers inherent in a multiple offense joinder situation are that the jury may become confused in trying to apply the applicable law and evidence to the correct offense; that the jury may consider that a person charged with doing so many things is a bad man who must have done something, a feeling that might lead to a cumulation of the evidence; that the judge might find it difficult to adequately charge a jury as to the law with respect to each offense; that the prosecutor may find it troublesome to present his evidence in a compartmentalized and understandable manner; and that a defendant may be confounded or embarrassed in his defense because of the sheer number or complexity of the charges against him. See: United States v. Catena, 500 F.2d 1319 (3rd Cir. 1974); United States v. Clayton, 450 F.2d 16 (1st Cir. 1971); Daly v. United States, 119 U.S.App.D.C. 353, 342 F.2d 932 (1964); Drew v. United States, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964); United States v. Quinn, 365 F.2d 256 (7th Cir. 1966); United States v. Lotsch, 102 F.2d 35 (2nd Cir. 1939); United States v. Moreton, 25 F.R.D. 262 (W.D.N.Y.1960); Wright, 1 Federal Practice and Procedure § 222, p. 435; 8 Moore's Federal Practice §§ 8.05[2], 14.03. Moreover, there is no doubt that the greater the number of offenses charged and the degree of their complexity, the greater the likelihood of the occurrence of any or all of these dangers. 8 Moore's Federal Practice § 8.02[1]. These problems are further exacerbated when the state has chosen to charge jointly two or more defendants. For these reasons, this Court will closely examine any denial of a motion for severance in which a defendant claims that the number and complexity of the crimes charged present a real possibility of these enumerated or related dangers in his case.
In the case before us, defendants Proctor and Young were charged with one count each of armed robbery and nine counts each of attempted first degree murder. These charges, although admittedly arising from a series of transactions joined together (or essentially the same transaction), were based upon a series of separate actions each of which had to be proved individually. During the course of the two-day trial, twenty-three witnesses, eleven of whom were victims of the offenses, testified for the state; the defense offered no evidence. While the state's case was well organized and presented with clarity, it is quite possible if not likely that the jury found difficulty in remembering[5] and distinguishing the evidence relating to the nine attempted murder charges. It is obvious, as defense counsel urged in closing argument, that a discriminating analysis of the evidence was essential. He claimed, for instance, that the state had improperly charged defendants with four counts of attempted first degree murder based upon evidence that one shot had been fired at each of two patrol cars in each of which *492 two officers were riding. Furthermore, he argued that defendants had not intended to kill but only to frighten off the pursuing officers by firing upon them; evidence indicating that some of the shots fired were fired wildly (e. g., hitting the pavement) supported this theory as to several of the counts.
We might, therefore, be impressed with defendant's argument on severance had he asked for and urged his motion for a severance on the basis that the nine attempted murder charges were too numerous to be tried at one time, especially in view of the nature of the offenses and the complexity of the evidence as to each charge. However, defendant's motion for severance, quoted hereinabove, clearly makes no such claim. It asks only for severance of the armed robbery charge from the murder charges so that defendant might be tried twice rather than once. We agree with the trial judge that there was no merit to that motion.
The single armed robbery was distinct and separate in its proof from the attempted murders which took place during defendants' attempt to escape. The evidence was presented by the state in such a way that the proof of the robbery was carefully and easily distinguished from the proof of the attempted murders. The elements of the crime of armed robbery are different from those of attempted murder, and a fact-finder would have had little difficulty in keeping them separated.
Moreover, this is not a case of "same or similar character" joinder, so that the severance issue in this case raises none of the issues which caused us to find error in the judge's failure to sever in State v. Carter, supra.
For these reasons, then, we find that the trial judge did not err in failing to grant defendant Young's motion for severance of offenses. The assignment of error lacks merit.

ASSIGNMENTS OF ERROR NOS. 2 AND 4 (PROCTOR)

ASSIGNMENTS OF ERROR NOS. 3 AND 5 (YOUNG)
By these assignments both defendants urge that the verdicts of guilty of attempted first degree murder of Wayne Ledet and guilty of attempted second degree murder of Frank Finane were contrary to the law and evidence. As defendants failed to urge these contentions to the trial court by motion for a new trial (or by any other means) this assignment is not properly presented for appellate review. See C.Cr.P. arts. 841, 920.
In any case, the Court lacks appellate jurisdiction to consider the sufficiency of the evidence, which is a question of fact, in criminal cases. Only when the defendant asserts a total lack of evidence of an essential element of the crime is a question of law presented which this Court can review.
These assignments lack merit.

ASSIGNMENT OF ERROR NO. 11 (PROCTOR)

ASSIGNMENT OF ERROR NO. 12 (YOUNG)
We construe these assignments, as made and as explained in brief, to be urging that otherwise legal sentences (i. e., within the allowable maximum statutory penalties) for the respective crimes charged in numerous counts of a single indictment are unconstitutional because as imposed they are to run consecutively. The consecutive sentences for each defendant were ninety-nine years without benefit of probation or parole on the armed robbery conviction and fifty years on each of the nine attempt murder convictions. The question as thus presented is narrower and different from the contention that a given sentence is excessive and thus reprobated by the Louisiana Constitution Article 1, section 20.[6]
*493 There is no merit in the contention. For the commission of ten crimes[7] the law permits defendants' being given ten sentences, and there is now no legal or constitutional bar to consecutive sentence imposition, except and unless one appears in an appropriate consideration of a properly raised objection to an excessive sentence in violation of the Louisiana Constitution.[8]

ASSIGNMENT OF ERROR NO. 12 (PROCTOR)
By this assignment, defendant Proctor argues that the state improperly exercised its peremptory challenges to exclude blacks from the petit jury, in violation of the equal protection clause of the fourteenth amendment.[9]
The record reflects that the state used five peremptory challenges during the jury impanelment, but there is no indication of the race of those persons. Nor did defense counsel complain to the trial court at any time that the state's exercise of its challenges was improperly motivated. Consequently, there is no record evidence to support defendant's factual allegation that blacks were excluded.
In addition, the record does not contain evidence of a historical system of discriminatory exclusion in the state's exercise of its peremptory challenges. Absent such a showing, defendant cannot successfully complain of discrimination in the choosing of a jury. State v. Rhodes, 351 So.2d 103 (La.1977), and the cases cited therein.

Decree
Accordingly, defendants' convictions and sentences are affirmed.
AFFIRMED.
SANDERS, C. J., concurs.
NOTES
[1] Proctor originally filed twelve assignments of error and defendant Young thirteen. Those assignments not argued are deemed abandoned. State v. Jones, 340 So.2d 563 (La.1976).
[2] The minutes reflect that defendant Proctor also filed a motion for severance, but he assigns no error complaining of its denial.
[3] Article 493 of the Code of Criminal Procedure provides in full that:

"Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial."
[4] Other questions will doubtless arise as the new statute is utilized. See, for example, State v. Carter, supra, which generally requires on motion of the state or defendant severance of offenses joined only because they are of "the same or similar character" if those offenses are not mutually admissible under R.S. 15:446 as "other crimes."
[5] Article 793 of the Code of Criminal Procedure provides that jurors may not refer to written notes but must rely upon their memories in reaching a verdict.
[6] Had excessiveness been the substance of the assignment it would have availed defendants naught because they entered no objection at the time of sentencing. Under the prevailing majority view on this Court, absent timely objection the issue of excessiveness is not properly raised on appeal. La.C.Cr.P. arts. 841, 920; State v. Williams, 340 So.2d 1382 (La.1976); State v. Williams, 322 So.2d 177 (La.1975); see especially State v. Bryant, 325 So.2d 255, 267 (La.1976) (concurring opinion).
[7] We deal here, of course, with a case where there were ten separate victims of these ten criminal violations. Compare, Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955); State v. McCarroll, 337 So.2d 475 (La.1976). 8 Moore's Federal Practice § 8.07[2].
[8] We deem it worth noting that consecutiveness may be a consideration in excessiveness attacks as was noted in State v. Underwood, 353 So.2d 1013, 1019 (La.1977) wherein we stated: "Based on American theory and practice, concurrent rather than consecutive sentences are the usual rule, at least for a defendant without previous criminal record and in the absence of a showing that the public safety requires a longer sentence. Except for an offender who has been convicted prior to the present offenses, the concurrent sentences should normally not exceed the maximum for the most serious offense tried." And as appears at footnote 6 of that same opinion "one of the justifications advanced for the `federal' rule of liberal joinder is that, thereby, the defendant will receive a greater opportunity to receive concurrent rather than consecutive sentences." 353 So.2d at 1019. Just as a matter of information, defendants herein have prior criminal records.
[9] Young's assignment number thirteen raised the same issue but because he does not argue it we deem it abandoned. State v. Jones, supra.