355 So.2d 1291 (1978)
STATE of Louisiana
v.
Robert WILLIAMS, Victor Livers and Charles Sam, Jr.
No. 60706.
Supreme Court of Louisiana.
March 6, 1978.
*1292 Clyde D. Merritt, John M. Blanchard, Orleans Indigent Defender Program, New Orleans, for Charles Sams, Jr. and Robert Williams.
Peter J. Compagno, New Orleans, for Victor Livers.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Sheila C. Myers, Asst. Dist. Attys., for plaintiff-appellee.
*1293 CALOGERO, Justice.
Defendants Williams, Livers and Sam were each accused of committing aggravated rape upon two fourteen year old girls referred to herein simply as K and G. Defendant Williams was found guilty of attempted aggravated rape upon G and not guilty relative to the charge of rape upon K. Defendants Lewis and Sam, on the other hand, were found guilty of attempted aggravated rape upon K and not guilty relative to the charge of rape upon G. Each of the three defendants was sentenced to serve fifteen years at hard labor. Upon their appeal they designate twenty-four assignments of error.
The rapes occurred after the victims, who had met defendants in the French Quarter, were taken to a house evidently belonging to one of the defendants. The young girls apparently went voluntarily to the house (although the record is not barren of a small amount of contrary evidence) and there were forced at gunpoint and knifepoint to have sexual intercourse. The victims were released otherwise unharmed.
The most significant arguments urged by defendants, as we view the case, are raised by assignments of error numbers two and twenty.

ASSIGNMENTS OF ERROR NOS. 2 AND 20
Defendants contend in assignment number two that the trial judge erred in refusing their pretrial motion for severance of the two offenses. They argue that dual charges of aggravated rape upon 14 year old girls, grave and reprehensible crimes as they are, has an especially prejudicial and "chilling" effect, sufficient to compel a severance of the charges. Defendants Livers and Sam argue in their assignment number twenty that the trial judge erred in denying a second motion to sever the charges urged after the state and defense had rested.
The claim of a criminal defendant (or defendants) to sever multiple offenses with which jointly charged is governed by Article 495.1 of the Code of Criminal Procedure. Under that article, when the defendant (or the state) moves for a severance before trial, the court shall grant the severance if "it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense." [Emphasis added here and elsewhere.] When a defense motion (or a state motion, with consent of defendant) is made during trial, the court shall grant the severance when "it is deemed necessary to achieve a fair determination of the defendant's guilt or innocence of each offense." The pretrial standard is broader because before trial there is a degree of speculation as to what the trial evidence actually will be; the standard which applies after trial starts is stricter because the trial judge is at that time able to analyze the evidence which has actually been admitted. State v. Proctor, 354 So.2d 488 (La.1977), No. 59,809; State v. Carter, 352 So.2d 607 (La.1977); ABA Standards on Joinder and Severance, § 2.2(b), p. 33.
First we review the trial judge's decision to deny defendants' motions for severance made before trial commenced. Defendants argue that their motions were improperly denied because of the prejudicial nature of the two offenses.
These crimes were joined under Code of Criminal Procedure, Article 493 because they were ". . . based on the same act or transaction or on two or more acts or transactions connected together. . . ."[1] In such a case, we will first review the issue, as we stated in State v. Proctor, supra, at 491, keeping in mind that:

*1294 "the jury may become confused in trying to apply the applicable law and evidence to the correct offense; that the jury may consider that a person charged with doing so many things is a bad man who must have done something, a feeling that might lead to a cumulation of the evidence; that the judge might find it difficult to adequately charge a jury as to the law with respect to each offense; that the prosecutor may find it troublesome to present his evidence in a compartmentalized and understandable manner; and that a defendant may be confounded or embarrassed in his defense because of the sheer number or complexity of the charges against him. Moreover, there is no doubt that the greater the number of offenses charged and the degree of their complexity, the greater the likelihood of the occurrence of any or all of these dangers. These problems are further exacerbated when the state has chosen to charge jointly two or more defendants." [citations omitted]
To make these examinations, we believe that the facts of the case bear repeating in some detail.
Each of three defendants was charged with raping each of two victims. The evidence showed[2] that the three defendants and two young girls entered a house together, whereupon defendants Sam and Livers successively raped victim K in a bedroom at gunpoint, while more or less simultaneously Williams raped victim G at knifepoint in the kitchen. The state's theory of the rape of K by Williams and of G by Sam and Livers (the charges on which the jury brought back acquittals) was apparently that defendants were principals in the crimes, for the evidence indicated intercourse by the defendants and the victims only in the pairings reflected in the three guilty verdicts. Although the record reflects that defendant Livers appeared briefly in the kitchen, for the most part the evidence establishes that three rapes were perpetrated against two different victims by three different defendants in separate rooms. The evidence as to each crime was concise and distinct, presented entirely by the victim of each rape.
Under these circumstances, there would seem to be little chance that the jury would have become confused in trying to apply the evidence presented to each defendant's pair of charged rapes. The evidence as to each was simple and direct and the crimes were separated enough in time and place as to be clearly distinguishable. Moreover, since each pair of offenses charged constituted violations of the same criminal statute, there was little possibility of difficulty on the part of the judge in describing the law applicable to each offense, or on the part of the jury in applying the law applicable to each offense in their deliberations. In regard to the problem of cumulation of evidence, we believe there was little chance of improper prejudice through cumulation because only two offenses were charged and these were of the same seriousness (for example, a particularly violent or gruesome crime was not tried along with a more benign one), and the evidence presented by the state as to each offense was of the same character (for example, a crime proved by scanty evidence was not tied to one where there was overwhelming evidence of guilt). Thus, we cannot find that the trial judge erred in denying defendants' pre-trial motions for severance of offenses. His determination that severance would not have been "appropriate to promote a fair determination of the defendant's guilt or innocence of each offense" was not in our view erroneous. C.Cr.P. art. 495.1.
*1295 We turn now to the contention of error in the judge's ruling during trial denying the defendants' motion for severance. As we have previously stated, the statutory test governing when a severance is to be granted after trial has commenced is stricter than the broader pretrial test. A motion for severance at this time allows a trial judge to consider the evidence as it has actually been presented and analyze the prejudice to defendants arising out of the fact that offenses have been joined. Although trial judges have an added responsibility in cases where multiple offenses are being tried to be aware of the possibility of jury confusion, we believe that there was no such serious danger in this case because, as explained above, the trial evidence was clear and compact and not at all complex. The trial judge did not err when he denied the severance and ruled that such was not necessary to achieve a fair determination of each defendant's guilt or innocence of each charged offense.
The assignment lacks merit.
We find no reversible merit to these assignments of error:
Assignments 1, 10, 11 (Williams and Livers) and 12 (Sam): The trial judge did not err in denying defendants' motion to suppress. Orleans Parish Criminal District Court magistrates do have the authority to issue search warrants, R.S. 13:1346(D). And there is no merit to defendants' contentions that some items of evidence were impermissibly seized because not particularly described in the search warrant. C.Cr.P. art. 165.
Assignments 3 and 20: We find no abuse of discretion in the trial judge's failure to sever defendants for separate trials because defendants made no showing at the hearing on the motion that the planned or intended defenses were actually antagonistic. State v. Singleton, 352 So.2d 191 (La. 1977); State v. Hunter, 340 So.2d 226 (La. 1976).
Assignment 4: Defendants moved to quash on the grounds that the offenses, having occurred before the statutory amendment to C.Cr.P. art. 495.1, were improperly joined in the charge and at trial. This issue has already been resolved contrary to defendants' contentions. State v. Sepulvado, 342 So.2d 630 (La.1977).
Assignment 5: The trial occurred in February of 1976. The petit jury was chosen in open court from prospective jurors who were called for voir dire in an order determined by lot. However, the drawing by lot itself was not accomplished in open court, as required by C.Cr.P. art. 784 and so interpreted in State v. Hoffman, 345 So.2d 1 (La.1977). Nevertheless, the ruling in Hoffman was specifically made to take effect prospectively, and to control only jury panels selected after its date of finality in May of 1977. The present 1976 jury selection having occurred prior to the effective date of the ruling, no reversible error is presented by this assignment.
Assignments 8 (Sam) and 9 (Williams and Livers): In the course of regulating defense counsel's cross examination the trial judge commented, on the heels of a question by defense counsel concerning the witness' prior testimony, "That is not what she said." Defense counsel moved for a mistrial on the ground that the judge's comment violated Article 772 which forbids a judge's comment upon the evidence, recapitulation of the evidence, repeating of testimony of a witness or the giving of an opinion as to what has been proved, not proved or refuted. The trial court refused to grant a mistrial, and because no admonition was sought none was given.
Assuming that the judge's comment was a prohibited comment on the facts by the judge in the jury's presence prohibited by Article 772, it was not one from which the jury could infer any expression of the judge's opinion concerning a relevant issue of fact or the credibility of a witness. State v. Hodgeson, 305 So.2d 421 (La.1974).
Assignment 9 (Sam): The trial court did not abuse its discretion in allowing the state, on redirect examination of a rape victim, to ask if her testimony as to the rape was true.
*1296 Assignments 13, 14, 15, 17, 18 and 19: Over defense objection the state was allowed to ask defendant Williams if the particulars of the victim's testimony were lies, if he would have stopped having sexual relations with the victim if she had asked him to stop, if he would admit he was guilty if he really were guilty, if he normally asked girls he had just met how they feel about sex. Over defense objection the state was allowed to ask defendant Livers if he would have stopped having sex if the victim had asked him to do so, and if he would tell the jury so if the victim had not given her consent. Defense argues that each of these questions was prejudicial and improper and the rulings permitting same erroneous.
While certain of the foregoing questions were perhaps improper and while all such questions are to be discouraged, and merit close scrutiny on review, we cannot conclude that the questions here posed were reversibly prejudicial. State v. Lewis, 353 So.2d 703 (La.1977), No. 59,714 handed down November 14, 1977; State v. Richardson, 337 So.2d 210 (La.1976).
Assignments 21 (Livers and Sam) and 18 (Williams): Article 774 of the Code of Criminal Procedure requires that argument be confined to evidence admitted, to the lack of evidence, to conclusions of fact to be drawn therefrom and to the law applicable to the case. State v. Joseph, 341 So.2d 861 (La.1977). In this case the trial judge over defense objection allowed the prosecutor in closing argument to compare the defendants' opening statements to the evidence actually adduced at trial. Since Article 774 allows argument on the lack of evidence, we see no prejudice in the state's pointing out deficiencies in the defense evidence as compared with the opening statements in which defendants set forth such evidence as they proposed to present during the trial.
Assignment 22 (Livers, Sam): There was no abuse of discretion in the trial court's refusal to grant defendants' motion for mistrial on the ground that the prosecutor commented that defendant Livers had not offered any character evidence as a part of his defense. Since defendant Livers' opening argument was totally devoted to the character evidence he planned to introduce, it was acceptable for the prosecutor to include in her closing argument a statement that defendant had not produced that evidence.
Assignment 23 (Livers, Sam): Article 770 of the Code of Criminal Procedure mandates a mistrial when a remark or comment made within the hearing of the jury by the district attorney during argument refers directly or indirectly to the failure of the defendant to testify in his own defense.
At the conclusion of the state's argument counsel for defendants moved for a mistrial based on the entire closing argument of the assistant district attorney, contending that during closing argument the prosecutor made a direct comment on the fact that Charles Sam had not testified. In brief defendants argue that the proscribed observation was "this is all the testimony you have heard except for the testimony of Williams and Livers." They urge that this was a direct reference to the fact that defendant Sam did not testify.
While we have been unable to find the quoted passage in the closing argument, we would not be inclined in any event to find such a comment a direct or indirect reference to defendant Sam's failure to testify in his own defense.
Assignment 24 (Livers, Sam) and 19 (Williams): We find no error in the trial court's denial of two special charges requested by defendants. One of the charges, a reading of R.S. 15:432, was properly denied as not wholly pertinent and correct, and the other, Code of Criminal Procedure Article 804(A)(2), was covered by the general charge. See C.Cr.P. art. 807.

Decree
Finding no reversible error, we affirm defendants' convictions and sentences.
AFFIRMED.
NOTES
[1] These rapes of two young girls took place in a single house over a relatively short period of time, about two hours. Defendants apparently acted in concert in bringing the girls to the house and in keeping them there. Under these circumstances federal courts would find that the crimes constitute the same transaction or series of transactions. Cataneo v. United States, 167 F.2d 820 (4th Cir. 1948); 8 Moore's Federal Practice § 8.05[2], We believe that our legislature, in adopting Code of Criminal Procedure Article 493, which tracks the language of the federal statute, likewise contemplated a liberal interpretation of the terms act and transaction. See State v. Carter, supra.
[2] We glean these facts from the trial transcript because we find in the record no facts of the occurrence as a part of the severance hearing transcript. We note, however, that the two victims did testify at the severance hearing about the statements they gave to police regarding the incident, and we assume that the trial judge had before him the text of these statements so that he could analyze the evidence as asserted at that time by the state. Although we would prefer to have the asserted facts in the record so as to facilitate our review, defendants make no complaint in this regard, and it would seem that there is agreement between the statements and the trial record.